Judge Buckner,
delivered the opinion of the court:
On the 9th of June, 1787, a patent from the commonwealth of Virginia, issued to Miles Hunter, for two thousand acres of land situated in the then county of Jefferson, but was subsequently included in the county of Shelby. The survey on which the patent issued, was made on an entry dated in December, 1732<
By bond, bearing date in August, 1784, Hunted bound himself to convey one half of the tract to James Knox and Hubbard Taylor, who on the 14th of January, 1804, assigned it to Joseph Simpson; Simpson also claimed one thousand nine hundred and fifty one acres of the tract, under a purchase made by him, upon a sale for the non-payment of the State *259 ífix thereon, and received the. register’s deed, dated' September, 1802.
In May, 1780, Wm. Shannon had caused an entry ta be made in his namo^or 560, interfering with the land claimed by Simpson, and procured a pateritthere-for, of date anterior to that of Hunter,
William Shannon died, having devised this tract to. Samuel Shannon,
In April, 1804,' Simpson filed his bill in chancery against Shannon, relying upon the validity of his entry, and the vagueness of Shannon’s; and praying that Shannon be compelled to yield his elder legal title, &c.
Shannon answered, denying the validity of Hunter’s entry, and contesting his right to the relief sought.; Simpson having died, the suit was revived in 1808, in the names of his heirs.
Samuel Shannon, having died in 1813, the suit which abated by his death, was revived against his infant heirs. The parties proceeded to make considerable preparations for the trial of the cause, and on the 22d< of Jane, 1815, it was submitted to the court for its decision; but thp court failing to d.eliveF an opinion, on a subsequent day of the same term, jt vyas ordered, on the motion of the complainants, that the bill be dismissed without prejudice.
But previous to this, oh the 16th of June, 1815,. Shannon’s heirs instituted an action of ejectment against Simpson’s heirs upon their elder patent. The demise was laid, as bearing date on the 1st of Feb-, ruary, 1815, and for the term of ten years. It conse^. quently expired on the 31st of January, 1825.
At the February term, 1816, of the Shelby circuit court, the plaintiffs obtained a verdict and judgment for the land i,n contest.
No writ of hab.er$ facias having issued, in April,, 1820, a scire facias was sued out, to revive the judgment; and at the February term, 1822, a judgment was had upon it by default, which was set aside on the motion of the defendants.
At the October term, 1823, judgment was again *260 entered on the. scieri facias for the plaintiffs, frorq which the defendants appealed.
At the June term, 1824, the opinion of this court affirming the judgment ofthdfcircuit court was filed, and a w rit of habré facias was awarded. At the same term, on the motion of Simpson’s heirs, commissioners were appointed under the act concerning occupying claimants, to value improvements, &c. to which the plaintiffs objected, t^nd moved the court for leave to. amend their declaration,, in the action of ejectment, by extending the demise. To this Simpson’$ heirs objected, and the court tools, time to cp,n-siderf-
The commissioners apppointed returned their report at the September term, 1824, which Shannon’s heirs moved the court to confirm; but at the instance bf the opposite parties, who objected tp it, because, ■as alleged no notice of' the time, and place of the meeting of the commissioners had been previously given, to one of the adult heirs of Simpson, and because they failed tp furnish them with a copy of their report upon request; it was quashed. The plaintiffs then renewed their motion for leave to extend the term of the demise in the declaration on which the judgment had been recovered, assigningas the grounds of the motion, that the defendants had imprope rly delayed the emanation of a writ of habere facias by the appeal which they prosecuted, and by the appointment of commissioners, and quashal of the report; that the demise laid in their declaration, would empire on the 31st of January next thereafter, and that the defendants would endeavor to produce further delay to prevent them from obtaining possession; and lastly, that if the demise should expire before they could procure the execution of their judgment, they would be barred in the posecution of another suit for the same land, because more than twenty years had already expired since possession thereof had been taken by the ancestor of the defendants under whom they claimed; as would appear from the record qf the proceedings had between the parties in the action of ejectment, in support of which, they exhibited complete transcripts of the records in that case¿ *261 and of the case on the scieri facias. This motion was ¡overruled.
No ,other attempt to procure the appointment of commissioners seems to have been made; and in a daysaftpr the report was quashed;and we presum© after th.e pnd of the term, the heirs of Simpson, on the 9th of Oct. 1824, filed their bill in chancery against the heirs of Shannon; setting forth the judgment ob« tained by the latter, and its revival on scieri facias} relying upon the validity of the entry under which ¿hey claimed, and tjie vagueness of Shannon’s; aná prayed for an injunction against the judgment, restraining the plaintiffs frpm attempting to turn them put of possession, which was granted by justices of the peace.
They answered the bill, fifing .their answer at the ensuing term, in which they give a history of the abovemenlioned proceedings, whiph they make across bill against Simpson’s heirs, making the records of the g,uits referred to exhibits, and charging them in ajl,thpse steps, with having been influenced by fraudulent motives, and with having unconscienciously procrastinated the issue of a writ of possession until the term of the demise had expired, so that they have lost th.e benefit of their judgment at law. They charge that the heirs of Simpson, with the intent pf effectuating theijr .object after the appointment of com-, missipners to make an assessment of the improvements, &c. failed to notify them of their appointment, or to take any step to procure a report, and .upon the quashal pf th,e report, made no further motion on that subje.ct; thaf immediately after the adjournment of the court in October, 1824, they applied for their writ of habere facias, but were restrained by th.e injunction. They deny the equity .relied on by their opponents, demand proof of the allegations of their bill, and pray that a decree may be entered compelling a surrender of the possession to them, or that they may be allowed.to amend their declaration by extending the demise, and for such other relief as the justice of their case might call for, &c.
Simpson’s heirs answered the cross bill, admitting that the term of the demise had expired relying upon *262 ifyj length of their possession, and insisting that th& chancellor had no right to interfere by giving there» Jief sought, and to deprive them of land which they had occupied adversely to those claiming it forpbore tweri(;j years previous tot he filing of the cross hill. They say, that in defending their claim throughout, they had only pursued the course pointed oht by law, and had not been guilty of any fraud.
At the September term, 1826*. the cause came on to be heard upon the bill, cross bill, answers, &c. when the circuit court entered* a decree dismissing both the bill and cross bill with costs. To reverse the decree dismissing the cross bill, Shannon’s heirs prosecute this writ of error, assigning such errors as presentall the points necessary to beconsidered to a full investigation and descision upon the merits of the case.
That the plaintiffs in-error have the elder legal ti-tile to the land in controversy, and have established their right to a partof it by the judgment of a court at law, possessing competent jurisdiction to adjudicate on the matter, is admitted. We say to a part, because by the verdict of the jury, in the action of ejectment, (and the judgment of the-court was entered in pursuance of it,) the defendants were found guilty of the trespass and ejectment in the declaration mentioned as to all the land therein described, except so much as Joseph Simpson, their ancestor had enclosed on the 12th of January, 180-2. The decree entered, dismissing absolutely the bill instituted by the defendants in error relying upon the alleged validity of their entry, and to reverse which, no appeal or writ of error has been prosecuted, is conclusive to shew, that their claim in equity was., as groundless as it proved to be at law.
Still, it does not follow as a necessary consequence,, that the relief sought by the plaintiffs in error, by their cross bill ought to be granted. For every violation of right, the law provides an appropriate remedy; but it often happens, although it be supported by the clearest and most satisfactory demonstrations of its existence, that it is lost by a want of propei- and vigilant pursuit.
General rule is, that when £ P(!rso? 0j. ignorance, become reme-dilessatlaw, he will not be relived in equity-
^fendanUn ejectment has by artifice & j ™ procrastinated judg--meat, and the issuing of an h-ahere facias ^¡Tterm of ^ the demise laid in the dc-g^red^he^ chancellor6 grant re"
However .undeniable therefore the claifti to compensation, for a violated right1, or for the recovery of property specifically, may be in a court of law, the chancellor cannot interpose, unless a case be exhibited by the bill and supported by proof or admission, where the jurisdiction of the chancellor can properly ■ attach.
And the general rule is, that if a party becomes ' remediless at law by his negligence or ignorance, he must not hope to be relieved in equity. Lex s<rvit vi-B.gilantibus, nori dcjrinienlibus. And courts of chancery were not, anymore than those of jaw, constituted to watch over the interests of the latter class.
Hat the case of a person seeking the aid of a court of chancery, is presented under a very different aspect, who shews, that he has been deprived of the means of enforcing his j udgment at law for property, _4io which he was not only legally,* but equitably enti-tied,) by the artifice, or fraudulent management of those against whom it was obtained, until all legal remedies which he might hate pursued, are barred by lapse of time.
J o contend that the doors of the chancellor can be ■properly closed against such a complainant, would be a perversion Of thé plainest principles of justice, andan unjust imputation upon our system of equitable jurisprudence! Whether the plaintiffs in error viccupy such an attitude, is one of the points presented • by the present record. • ,
In the first place it is not unworthy of remark, the defendants do not expressly deny the charge in ' the cross bill, of having fraudulently endeavored to :.procrastinate the issue of the habere facias in favor of the plaintiffs, until the term of the demise laid in their declaration should expire. They deny fraud to be sure, in general terms; but whether fraud has been committed, must depend (unless it be admitted by the individuals charged with its perpetration,) upon inferences from facts. It is the province of the chancellor, and not of the party charged, to draw those deductions, upon the case, as exhibited by the proof, or the admissions of the defendant. The defendants here are-charged with having fraudulently pursued a certain course to effectuate, (frustrate,) by unneces *264 'sary and improper delay, the execution of a judg-’meat fairly and honestly obtained; and instead of meeting the charge directly, and saying, if they "'could do so truly, that in the steps which they took, ’"they had no Such object in View as that alleged; but had acted with the design only, of honestly securing their rights '; they give their opinions of the charac-'tcr of the defence which they had blade, saying not ' a word as to the motive by which they were influenc- ' ed. But passing over this view of the subject, let us look to the facts established by the record in this case; and thére will be but little, if any ground, on which to doubt the truth óf the allegations in the cross bill, as tó the design to waste time until the demise expired; and that the defendants in error, after having, by their opposition defeated the motion to extend the term, obtained and used the order of the chancellor granting the injunction to defeat the purposes of justice.
Why the suit in chancery, instituted in 1804-; was abandoned; and a dismission of the bill suffered by the complainants who are now the defendants in error, we are not enabled to determine. It seeihs to have been prepared with considerable labor for trial. It cannot be reasonably inferred, that they were at that time influenced by any improper motive; because the action of ejectment had beeu then depending for a few days only. Whether, when in 1833, the judgment of revival on the scire facias was set aside, the heirs of Simpson had conceived the design of producing by delay, the result which eventually ensued is not necesshry to be inquired into. The same remark may be applied to the prosecution bf the appeal from the judgment which was thereafter rendered at the October term, 1824. Had the points, upon which that case turned, been by far more plain than they were, theyhad an undeniable right to demand the opinion >of this court upon theih, and in the language employed on a similar occasion, in the case of Bowman, &c. vs. Violet, &c. IV Mon. 355, “we cannot think it correct to charge the conscience of the| litigants, in making the application for our decision.” When, in June, 1824, they applied for the appointment of commissioners tb value improvements, &c. and the plaintiffs in effor objected, *265 'jníess, upon leave given to amend their declaration ihe objection ought to have been sustained, if the doctrine laid don n in the above cited case be cor-íéct: but it was overruled through the opposition -of the defendants in error! But suppose that there was nothing inconsciencious in this, and that the court overruled the objection, upon the conclusion that there would he full time to execute the judgment after the return of the commissioners report; upon no principle of propriety can their subsequent conduct be justified. Had they filed their bill, and in open court, moved for an injunction, surely, they could not have succeeded, without consenting to the-'desired extension of the demise. The application for the injunction would have been addressed to the discretion of the chancellor; and it is altogether improbable that he would have exercised that discretion to the production of such manifest injustice, as to prevent "by his restraining order, the plaintiffs from obtaining possession under their judgment until itshould become -a nullity.
The case above referred to of Boman, &c. vs. Violet, &c. has been-cited by the counsel for Simpson's heirs, and confidently relied Upon as conclusive of this controversy. We do not so consider it.
We have attentively examined that case, and shall not question its correctness, it is not necessary to do so, to shew that the decree, dismissing the cross hill is erroneous; because there are some important features in this case, which 'distinguish'it from that, it is there declared, that pending either the injunction or appeal, Bowman, by an application to the court, might have compelled him to consent to an extension of the demise, or to the discharge of the injunction, so that he might enter; and that when he claimed payment for his improvements, the court might have refused to sustain his claim till he consented to make the judgment .at law operative. But Bowman made no such application, and contributed by excepting to (he commissioners report, to the very embarrassment of which, he afterwards complained. He seems to have been dozing over his case, even when his demise was upon the verge of expirations, apd Violet did not remind him of the approaching *266 danger. Whatever course the dictates of the most sublimated morality might, in tb'e opinions of some men, direct to lie pursued on such an occasion, the .charge of fraud cannot, on that account, be fastened upon him in a court of common law or chancery. A litigant is not bound in conscience to inform his opponent of shoals and quicksands which lie in his way. He may, without subjecting himself to just censure, I leave him to the exercise of his own judgment, and if in pursuing that, he becomes stranded or shipwrecked, it must be charged to his own folly or misfortune. His adversary is not bound to afford him the slightest aid in attempting to extricate himself. But the plaintiffs in error were forced into the situation which they now occupy, by the cunning and fraudulent management of their adversaries. They perceived their danger before it was too late; and although several years had been permitted to pass away without any attempt to enforce their judgment; towards the close of t'ne demise, laid in their declaration, the) vigilantly attempted to avoid.the difficulty. But it was in vain. As their vigilance increased the hopes of their adversaries, that by additional procrastination, they might be placed beyond the influence of the judgment, no doubt strengthened; and had they placed themselves under the shelter so much desired by them, by honestly pursuing the remedies which the law placed within their reach, it would be an unwarranted stretch of power on the part of the chancellor to dislodge them. But they do not occupy such a position. After the reporto? the commission‘ers was quashed in the fall of 1824, and they had permitted the court to adjourn without making any ’motion to appoint the same, or other Commissioners, thereby inducing their adversaries to believe that they had abandoned the defence, and that no- other obstacle would be thrown in the way to prevent thorn from acquiring the possession of property, to 'which their right had been demonstrated at law,and which had been attacked in chancery, without success; the defendants in error obtained in vacation an injunction, which they knew, could not, under any 'circumstances be dissolved, until after the demise ■laid in the declaration of Shannon’s heirs had expire od.; thus, under the pretence of setting on foot an !«■■■' *267 -vesiigation of the merits of the claims of themselves and apponems, actually closing the door against it, so .that they should prevail, although their claim should prove to be worthless. We do not intend to say, that although a previous opportunity had been offered to them, of having the validity of their claim tested, that they htd no right to file their second bill, and had they done 'so without injunction, or had they •fairly stated to the magistrates, from whom they obtained arordcr for the injunction, a true and full history of tie case, there might have been less ground for cha-ging them with impropriety and unfairness. But it vas unconsciencious, after resisting the motion to extmd the demise, to postpone their application for a'injunction, until the chancellor, who was well acqmnted with the situation of the opposite party, haffetired, and then to obtain it from magistrates by co^ealing from them the true history of the case. Sch conduct carries on its forehead the legible and jdelible stamp of fraud; Yet it has been insisted, lat the defendants in error have availed themselves, ■f advanlantages only which the law gave them, without any fraudulent act, and that great. Inches are-imputable to the plaintiffs in error.
It is true that the heirs of Shannon did not institute their ejectment, at as early a period as they might have done-; nor after its institution,, did they, prosecute it throughout with all possible vigilance. They might too, have laid their demise for a term which would have saved the expense and-' trouble of the controversy in its present shape.. But these omissions did not produce the embarrassment under which they are laboring. They evidently incurred great risk from them, and might thereby, without any unfair conduct on the part of the defendants, have found themselves in a situation from which they would have had no right to expect relief, and for which they coulc! have justly censured themselves only. But it eventuated differently, and these objections to the relief now sought, cannot, under existing circumstances avail the defendants.
But it is further urged as an argument against the equity relied on in the cross bill, that the plaintiffs rpight, and when they saw, that the demise wasabotff- *268 to. expire, should have resorted to other remedies, which the law placed within their reach; that they might have entered upon the land in controversy,, and if they liad been expelled under a writ of forci- ' ble entry and detainer, might still have availed themselves of that entry, to avoid the limitatioa, and that, having failed to take that course,the chancellor ought-not to interfere. A satisfactory answer presents itself to this view of the subject. The plaintiffs had attempted to use the ordinary remedy by action of ejectment-to obtain possession* It would have proved effectual', but for the unjustifiable conduct of the defendants, and when thus frustrated by fraud itwas not their duty t,o make an entry, to lay the fumdation for'a second experiment by (he same forrmf action, especially as they had been called into a coift of chancery by their adversaries, where they ht} a right to expect justice. Had no fraud been pratjs_ •cd,the argument would have applied with force, cause, under such circumstances, the situation of U parties seeking relief, would have been the result t sheer negligence on their part.
There is one other view of this subject necessary to be.taken, which, in .connection with that which, has preceded, shews that the relief sought by the\ plaintiffs in error ought to have been granted. At \ the time Simpson’s heirs filed their bill with injunction, the plaintiffs in error had under their judgment in ejectment,, a subsisting right of entry. Now, it is a rule in chancery, settled not only by the English authorities, but recognized by the repeated decisions of this court, that a defendant to an original bill may file his answer in the nature of a cross bill, insisting upon claims, although they be of a purely legal-character, relating to the subject of controversy, and b& entitled to a decree. Under such circumstances, ifisnofa sufficient answer to the demand thus set up, to say it is cognizable at law. Having been drawn into a court of equity by bis adversary, he wilt not be turned around to bis common law remedy. The court having the cas'e before it, may, and in most cases will, to avoid multiplicity of suits, do jus-, tice between the parties at once. See Mit. 76; Coop. 86; Ford and Warren vs. Sproule, and Co, II Mar- *269 shall, 528; Head, &c. vs. Perry, I Mon. 258; Hume &c. vs. Long’s representatives, VI Monroe.
It is true that the demise laid in the declaration of the plaintiffs in error had expired previous to the time that the answer was marked as filed in court, and that previous to that time, more than twenty years had elapsed from the period at which the defendants in error had first taken possession of the land in contest. But the bill of the defendants in error, with injunction, had been filed, and the answer of the plaintiffs had been lodged in the clerk’s office and process issued on it, which was in part* served before the expiration of the demise, and that issufficienf to justify the oourt in granting the relief sought. The answer was not noted on the records as filed in court at an earlier day, because no terna of the circuit court in which the suit was pending, occurred between the filing of the bill of the defendants in error, and the 31st of January, 1825, when the dimise expired.
In the argument of this case, it has been insisted, that if a bill is filed before the five years, or twenty years, (as the case may be,) have expired, and it is permitted to lie in the office without process issued on it, until the period which presents the bar has expired, the right is lost; that the bare filing of the bill cannot save it. But we-understood it as admitted,, and it certainly cannot be reasonably denied, that if process-be issued on it previous to that time, the case is entirely changed.
The circuit court, therefore, should have caused the boundaries of so much of the land in controversy as the plaintiffs in error, might legally have taken possession of, under their judgment in ejectment, hadi they not been prevented by injunction, to have been ascertained previous to the final decree.
Commissioners should also have been- appointed to ascertain the value of improvements, amount of rent, áre. according to the provisions of the statute concerning occupying claimants, that justice in relation to those matters might have been done between! the parties; and then to have entered a decree com-pellingthe defendants in error, to yield the possession *270 of the land, according to the boundaries so ascertain-, ed, to the plaintiffs in error, and perpetually injoim ing said defendants from attempting to regain the possession upon any claim founded upon the length of their past possession.
Petition,
Denny, for plaintiffs; Mills, Brown and Richardson, for defendants.
The decree of the circuit court must be reversed with costs, and the cause remanded, with directions for such proceedings to be had as may be necessary, preparatory to a final decree in the case, and that such decree be eventually entered, as may not be inconsistent with this opinion.